UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ABDIEL ALEMAN-COLON,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

_____

23-CV-297
20-CR-78
DECISION & ORDER

The petitioner, Abdiel Aleman-Colon, has moved to vacate his judgment of conviction under 28 U.S.C. § 2255. Docket Item 78.[1] For the reasons that follow, the motion is denied.

## BACKGROUND

On October 15, 2021, Aleman-Colon pleaded guilty to count 1 of the superseding information, which charged a violation of 21 U.S.C. § 846 (conspiracy to possess with intent to distribute at least 500 grams of a substance and mixture containing cocaine). Docket Items 49, 50, and 51. In his plea agreement, Aleman-Colon agreed that count 1 carried a mandatory minimum sentence of five years. Docket Item 50 ¶ 1. He further agreed that based on his offense level and criminal history category, the United States Sentencing Guidelines ("Guidelines") "range would be a term of imprisonment of 210 to 262 months." *Id.* ¶ 12 (emphasis omitted). And he agreed to waive his right to appeal

---

[1] Citations are to the criminal docket, number 20-cr-78, and page numbers in docket citations refer to ECF pagination.

or collaterally attack any sentence imposed within or below the Guidelines range in the plea agreement. *Id.* ¶ 21.

During the plea colloquy, the Court questioned Aleman-Colon extensively to ensure that he was proceeding knowingly and voluntarily. *See* Docket Item 76. The Court specifically inquired about Aleman-Colon's understanding of the mandatory minimum sentence—5 years—that the Court was required by law to impose. *Id.* at 13. The Court also confirmed Aleman-Colon's understanding that his Guidelines range would include a sentence of imprisonment of 210 months to 262 months, *id.* at 45, and that he would not be able to appeal a sentence of imprisonment of up to 262 months, *id.* at 49-50.

At sentencing, consistent with both the plea agreement and the presentence report, the Court calculated Aleman-Colon's Guidelines range as 210 to 262 months. Docket Item 77 at 11-12. The Court then imposed a below-Guidelines sentence of 180 months. *Id.* at 24.

Aleman-Colon did not appeal. But on April 3, 2023, he filed this motion to vacate his judgment of conviction under 28 U.S.C. § 2255, alleging (1) that his guilty plea was not knowing and voluntary because he received ineffective assistance of counsel from his former attorney, Telesforo Del Valle, Jr., and (2) that his guilty plea lacked a sufficient factual basis. Docket Item 78 at 5, 22. In the alternative, Aleman-Colon requested a hearing on the alleged ineffective assistance of his counsel. *Id.* at 2. On May 10, 2023, the government responded to Aleman-Colon's section 2255 motion. Docket Item 80. Aleman-Colon did not reply.

2

## **DISCUSSION**

I.  **MOTION TO VACATE THE JUDGMENT UNDER 28 U.S.C. § 2255**

Aleman-Colon seeks relief under 28 U.S.C. § 2255, which provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). A court may dismiss a section 2255 petition without first conducting a hearing if the petition and record "conclusively show" that the petitioner is not entitled to the relief he seeks. *Id.* § 2255(b).

### A.  **Aleman-Colon's Waiver**

"A defendant's knowing and voluntary waiver of the right to appeal or collaterally attack his conviction and/or sentence is enforceable." *Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016); *see Cook v. United States*, 84 F.4th 118, 122 (2d Cir. 2023). In fact, if such waivers are not enforced, the promise not to challenge a conviction and sentence "becomes meaningless and would cease to have value as a bargaining chip in the hands of defendants." *Cook*, 84 F.4th at 122 (quoting *United States v. Yemitan*, 70 F.3d 746, 748 (2d Cir. 1995)).

"[E]xceptions to the presumption of the enforceability of a waiver . . . occupy a very circumscribed area of [the Second Circuit's] jurisprudence." *United States v. Burden*, 860 F.3d 45, 51 (2d Cir. 2017) (first alteration and omission in original) (quoting *United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000)). In fact, the Second

3

Circuit has noted only four circumstances under which such a waiver might not be enforceable:

> (1) where the "waiver was not made knowingly, voluntarily, and competently;" (2) where the sentence was "based on constitutionally impermissible factors, such as ethnic, racial[,] or other prohibited biases;" (3) where the government breached the agreement containing the waiver; and (4) where the district court "failed to enunciate any rationale for the defendant's sentence."

*Id.* (quoting *Gomez-Perez*, 215 F.3d at 319).

A claim that defense counsel was ineffective "challeng[es] 'the constitutionality of the *process* by which [the defendant] waived [his rights]'" and is one way that a petitioner can demonstrate that his plea was not knowing and voluntary. *See Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008) (quoting *United States v. Hernandez*, 242 F.3d 110, 113 (2d Cir. 2001)); *see also United States v. Lloyd*, 901 F.3d 111, 124 (2d Cir. 2018) (explaining that a defendant's "guilty plea [is] invalid and his appeal waiver [is] unenforceable if he prevail[s] on his claim that he received constitutionally ineffective assistance of counsel during his plea proceedings"). That is because a claim "challenging the attorney's *advice* about [the defendant's] bargaining position . . . connect[s] the knowing and voluntary nature of the defendant's plea decision with the attorney's conduct." *Parisi*, 529 F.3d at 139.

Here Aleman-Colon tries to do just that: His motion attempts to circumvent his collateral-attack waiver by arguing that his counsel was ineffective. More specifically, Aleman-Colon says that his former attorney (1) did not adequately "investigate the facts and law," therefore failing to address the plea agreement's "obvious disadvantages in terms of sentencing exposure" and the "strengths and weaknesses of the government's evidence or any potential defenses"; (2) "unreasonably advised" him "to stipulate to drug

4

quantity despite the lack of evidence"; and (3) "unreasonably advised" him "to accept the terms of the plea agreement despite the lack of evidence of a leadership role in the conspiracy." Docket Item 78 at 27-32 (emphasis omitted). For the reasons that follow, none of these claims pass muster, and Aleman-Colon's waiver of his right to collaterally attack his conviction is enforceable.

### B. Ineffective Assistance of Counsel

#### 1. The Applicable Law

To establish ineffective assistance of counsel, a defendant must "(1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms'; and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation." *United States v. Cohen*, 427 F.3d 164, 167 (2d Cir. 2005) (citations omitted) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 693 (1984)). District courts need not address both components if a petitioner fails to establish either one. *Strickland*, 466 U.S. at 697; *Garner v. Lee*, 908 F.3d 845, 861 (2d Cir. 2018).

Under the first prong, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The petitioner may overcome this presumption by showing "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *Strickland*, 466 U.S. at 689. In considering whether counsel "failed to exercise the skills and diligence that a reasonably competent attorney would provide under similar circumstances," *Boria v. Keane*, 99 F.3d 492, 496 (2d Cir. 1996) (emphasis

5

omitted), courts look to the totality of the circumstances, are "highly deferential," and make "every effort . . . to eliminate the distorting effects of hindsight," *Strickland*, 466 U.S. at 688-89.

Under the second prong, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," *id.*, including "the overall integrity of the proceeding," *Santiago-Diaz v. United States*, 299 F. Supp. 2d 293, 300 (S.D.N.Y. 2004). "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citation omitted) (quoting *Strickland*, 446 U.S. at 687, 693).

In the context of a guilty plea, the prejudice prong requires the defendant to "show that there is a reasonable probability that were it not for counsel's errors, he would not have pled guilty and would have proceeded to trial." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) (discussing ineffective assistance claim in the context of a motion to withdraw a plea). That is, a defendant must show that "the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012).

A defendant may make this showing by "producing both a sworn affidavit or testimony stating that he would have accepted or rejected a plea agreement but for his counsel's deficient performance and also some additional 'objective evidence' supporting his claim." *United States v. Frederick*, 526 F. App'x 91, 93 (2d Cir. 2013)

6

(summary order) (quoting *United States v. Gordon*, 156 F.3d 376, 381 (2d Cir. 1998)). Where a defendant specifically claims that counsel misled him as to the possible sentence that might result from his guilty plea, the "issue is whether the defendant was aware of actual sentencing possibilities, and if not, whether accurate information would have made any difference in his decision to enter a plea." *Arteca*, 411 F.3d at 320 (quoting *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1992)); *United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir. 1989) (counsel's performance is generally not considered deficient even if counsel made an incorrect estimation or prediction of sentencing before the defendant pleaded guilty).

### 2.   Advice in the Plea-Bargaining Process

Aleman-Colon generally argues that his plea and waiver were not knowing and voluntary because Del Valle did not adequately investigate the facts and therefore failed to properly evaluate the strengths and weaknesses of the government's evidence and his sentencing exposure. *See* Docket Item 78 at 27-33. For that reason, he says, Del Valle "unreasonably advised" him to stipulate to certain facts and accept the plea agreement. *Id.* And Aleman-Colon says that he accepted the plea agreement only because his attorney told him that "the sentencing [G]uidelines . . . provide[] for only five to six years" and in light of the circumstances the plea offer was the "best deal [he] was going to get." Docket Item 78-1 ¶¶ 5, 7.

But all that is explicitly contradicted by the written plea agreement and the plea hearing where Aleman-Colon was told—and swore that he understood—virtually everything that he now claims ignorance about. *See* Docket Item 50 ¶ 5; Docket Item 76 at 34-40.

7

At the plea hearing, Del Valle and Aleman-Colon's interpreter both confirmed that they had reviewed the entirety of the plea agreement with Aleman-Colon and that Aleman-Colon had acknowledged to them that he had understood its terms. Docket Item 76 at 22-23, 51. In response to the Court's questions, Aleman-Colon said that he discussed with Del Valle the charges against him, his rights, the proposed plea agreement, and his options and that he understood all of those things. *Id.* at 11. The Court explicitly confirmed with Aleman-Colon that Del Valle had advised him of all the rights he was giving up by pleading guilty, that Aleman-Colon understood those rights, and that by pleading guilty he was voluntarily and willingly giving up those rights. *Id.* at 18-21.

Aleman-Colon explicitly confirmed that other than what was in his plea agreement, (1) no one had made any promises, representations, or guarantees to him in an effort to get him to plead guilty; (2) no one had promised him leniency or a particular sentence; (3) no one had threatened him, a family member, or anyone close to him to make him plead guilty; and (4) no one was forcing him to plead guilty. *Id.* at 23-24. The Court told Aleman-Colon that the decision to plead guilty was his alone, not his lawyer's; Aleman-Colon responded that he wanted to plead guilty and that his decision was made voluntarily and of his own free will. *Id.* at 24. Aleman-Colon also admitted that the facts included in his plea agreement were true, that he had no reason to disagree with the prosecutor's recitation of the evidence that would be presented at trial, and that he did the things that the plea agreement said that he did and that were charged in the superseding information. *Id.* at 38-39.

8

As to his possible sentence, Aleman-Colon said that he had been advised of and understood the maximum and mandatory minimum penalties for the charge. *Id.* at 13. In fact, the Court explicitly addressed the maximum sentence that could be imposed, *id.* at 26; the Court's discretion to impose the maximum sentence notwithstanding the Guidelines, *id.* at 46; and Aleman-Colon's inability to withdraw his plea based on the sentence imposed, *id.* What is more, the Court explicitly asked Aleman-Colon under oath—twice—whether he understood the agreed upon Guidelines range of 210 to 262 months. *Id.* at 45 ("THE COURT: Specifically, you and the government have agreed that the [G]uidelines would call for a sentence of 210 months to 262 months of imprisonment. That means 17 years and six months, to 21 years and ten months; plus a fine of between $40,000 and $10 million; plus a period of supervised release of five years; plus the special assessment of $100; do you understand that? THE DEFENDANT: Yes, Your Honor. . . . THE COURT: So let me ask it again, because I want to make sure you understand this. Do you understand that the [G]uidelines would call for a sentence of between 210 months and 262 months of imprisonment, so that means 17 years and six months to 21 years and ten months; a fine of $40,000 to $10 million; supervised release for five years; and a special assessment of $100. THE DEFENDANT: I understand.").

The Court also asked Aleman-Colon, "Do you understand that the sentence imposed may be different from any estimate that your lawyer or anybody else may have given you?" and "Do you understand that neither the uncertainty of your eventual sentence nor any disappointment you may have about the [G]uidelines calculation will

9

be a basis to withdraw your plea?" *Id.* at 44. Aleman-Colon answered "I understand" to both questions. *Id.*

Aleman-Colon takes specific issue with the drug quantity and leadership role to which he agreed and that significantly increased his Guidelines calculations. *See* Docket Item 78 at 29-33. In fact, he says while he "understood that he was pleading guilty to conspiring to possess 500 grams or more of cocaine, his attorney never explained to him that he was going to be sentenced based upon a quantity much greater than 500 grams." *Id.* at 29. Along the same lines, he says that his attorney unreasonably advised him to accept a Guidelines enhancement for a leadership role when, in fact, he was not a leader. *See id.* at 31-33. But even if counsel was deficient in advising Aleman-Colon about those enhancements, the Court confirmed that Aleman-Colon knew very well about the drug quantity and the leadership role in the conspiracy to which he was agreeing and the impact of those things on his potential sentence. *See* Docket Item 76 at 38, 42-43.

In fact, the Court took great pains to confirm that Aleman-Colon understood both that he was agreeing to have been a leader in the conspiracy and that the amount of drugs involved was considerably more than that to which he was pleading guilty:

> THE COURT: Do you understand that the conduct that will be used to compute your [G]uidelines range will include not only the conduct that you plead guilty to, but also relevant conduct that may involve counts that are dismissed or that never were charged in the first place?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: So, for example, do you understand that in paragraph 8 of the agreement, you and the government are agreeing that because you played an aggravating role in the offense, that is because you were a leader, there will be a four-level increase in your [G]uideline calculation?
>
> THE DEFENDANT: I understand.

10

> THE COURT: Do you want to talk to your lawyer about that? You look like you want to talk to your lawyer about that. Go ahead.
>
> (Off the record at 2:19 p.m.)
>
> (Back on the record at 2:20 p.m.)
>
> MR. DEL VALLE: Thank you, Your Honor.
>
> THE COURT: You're welcome. So do you understand that? So there's gonna be a four-level increase of the calculation because you were a leader; do you understand that?
>
> THE DEFENDANT: I understand.
>
> THE COURT: Okay. And do you understand you're pleading guilty to only 500 grams or more of cocaine, but the amount that's going to be used for relevant conduct is a lot more than that. The amount that's going to be used is at least 50 kilograms, but less than 100 kilograms; do you understand that?
>
> THE DEFENDANT: I understand.
>
> THE COURT: And do you understand that there might be other conduct, conduct that we're not even thinking about now, that may affect your [G]uidelines calculation?
>
> THE DEFENDANT: I understand.

*Id.* at 42-43.

Aleman-Colon also acknowledged, both under oath during the colloquy and in his plea agreement, that he was giving up his right to appeal or collaterally attack his conviction and sentence as long as his sentence was no more than the Guidelines range of 210 to 262 months of imprisonment. *Id.* at 49; Docket Item 50 ¶ 21. The Court sentenced him to 180 months, well below the Guidelines. Docket Item 77 at 24. And Aleman-Colon further said that he had discussed giving up his right to appeal with Del Valle and that based on that discussion, he agreed to give up his right to appeal consistent with the plea agreement and the Court's explanation. Docket Item 76 at 50.

11

The "bare allegations" in Aleman-Colon's petition do not overcome his sworn statements to the contrary, which must be given the "presumptive force of truth." See *Mejia v. United States*, 740 F. Supp. 2d 426, 429 (S.D.N.Y. 2010) (citing *Hernandez*, 242 F.3d at 112-13). Based on the lengthy and careful plea proceeding, the Court has no reason to conclude that Del Valle "failed to exercise the skills and diligence that a reasonably competent attorney would provide under similar circumstances." *Boria*, 99 F.3d at 496 (emphasis omitted).[2]

In sum, Aleman-Colon has not shown that he received ineffective assistance of counsel in relation to his guilty plea or the plea agreement. And even if counsel was ineffective, the Court cured any problems in the plea colloquy. Aleman-Colon's claims regarding ineffective assistance of counsel—that counsel misadvised him regarding the sentence exposure, drug quantity, and plea agreement—therefore fail. Because the record is clear, his request for a hearing is denied. See 28 U.S.C. § 2255(b).

### C. Factual Basis for Guilty Plea

Rule 11(b) requires that before accepting a guilty plea "the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). To fulfill this requirement, the court must "assure itself simply that the conduct to which the

---

[2] Even assuming for the sake of the argument "that counsel misadvised [Aleman-Colon] in some way regarding his potential sentence, this error was cured by the Court's thorough questioning of [him] throughout the plea allocution and the fact that the potential sentences were laid out in the [p]lea [a]greement and in the allocution." See *LaMarco v. United States*, 336 F. Supp. 3d 152, 170 (E.D.N.Y. 2018) (citing *Ventura*, 957 F.2d at 1058). As outlined above, the Court thoroughly questioned Aleman-Colon before he pleaded guilty, ensuring in particular that he understood the mandatory minimum sentence, the Guidelines range, and the potential maximum sentence he could receive. See Docket Item 76 at 45.

12

defendant admits is in fact an offense under the statutory provision under which he is pleading guilty." *United States v. Pattee*, 820 F.3d 496, 509 (2d Cir. 2016) (quoting *United States v. Maher*, 108 F.3d 1513, 1524 (2d Cir. 1997)). The court's inquiry into the factual basis can "be made of the defendant, of the attorneys for the government and the defense, . . . or by whatever means is appropriate in a specific case." *Maher*, 108 F.3d at 1524. The best practice is "for the District Court to ask [the defendant] to explain in his own words exactly what he did that made him guilty of the crimes charged." *Lloyd*, 901 F.3d at 123. But the court need not do that and might "have . . . the government describe in front of [the defendant] the factual predicate for the offense, and s[eek the defendant's] objections or assent to the description." *Id*. Here, the Court did both and more.

The Court first asked the government to "summarize or read the facts the government would be prepared to prove at trial if this case were to go to trial," and the prosecutor recited those facts in significant detail. *See* Docket Item 76 at 34-38. The Court then asked Aleman-Colon whether he understood everything that the prosecutor said and whether "everything that he said about [Aleman-Colon], and about [his] conduct, and about [his] intent [was] true and correct." *Id*. at 38. Aleman-Colon answered "yes" to both inquires. *Id*.

The Court then asked the prosecutor how the government would "prov[e] those facts if this case were to go to trial." *Id*. In response, the prosecutor detailed wiretap evidence, witness testimony, and exhibits that the government would offer as proof. *Id*. 38-39. Aleman-Colon then acknowledged that he did not "disagree with anything [the prosecutor] said about how the government would prove its case." *Id*. at 39. He also

13

confirmed that he was "pleading guilty because [he] did the things that the plea agreement says [he] did, and that are charged in the superseding information." *Id.*

The Court then followed what the Second Circuit said is the best practice and asked the defendant to state in his own words "what [he] did that [he was] pleading guilty to." *Id.* at 39-40. The defendant said that "[a]round 2015 to September 2017, in the City of Buffalo, I conspired with other people to help to distribute more than 500 grams. When I did this, I knew that what I was doing was illegal, and I'm very sorry for doing this." *Id.* at 40. And when the Court asked, "[m]ore than 500 grams of what?," the defendant answered, "[c]ocaine." *Id.*

What is more, the Court then asked Aleman-Colon specific questions about whether each essential element of the crime was true:

> THE COURT: So there was an agreement to commit a controlled substance felony offense between or among two or more people?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And did you know about that agreement?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Did you participate in it?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And was at least 500 grams of cocaine part of that agreement?
>
> THE DEFENDANT: Yes, Your Honor.

*Id.* at 40.

Based on all that, the Court found that there was a factual basis for Aleman-Colon's guilty plea. *Id.* at 55-56. But Aleman-Colon says all that was not enough. He says that his guilty plea still lacked a factual basis because he "never admitted to

14

specific conduct that constituted the offense," Docket Item 78 at 35 (emphasis and capitalization omitted), and that when asked to describe in his own words what happened, he "merely parroted the charge to which he was pleading," *id.* at 36.

This Court disagrees. Not only did the Court ask Alemon-Colon to "tell me in your own words what you did that you're pleading guilty to," Docket Item 76 at 39-40—something that is a best practice but not required, *Lloyd*, 901 F.3d at 123—the Court also had the prosecutor detail both the facts that would be proved at trial and how the evidence would prove them. Docket Item 76 at 34-39. The Court confirmed that the defendant agreed with the facts and that he had no reason to disagree about how the government would prove them. *Id.* And if all that were not enough, the Court then asked specific questions about whether each essential element of the crime was true. *Id.* at 40. That went far beyond what was required to establish a factual basis for the plea. *See Pattee*, 820 F.3d at 509.

Furthermore, Aleman-Colon's assertion that he did not admit any specific facts—particularly that "[h]e did not admit that he was 'Yeso' or that he had participated in the phone conversation . . . or had discussed supplying cocaine to anyone in Buffalo," Docket 78 at 36—is demonstrably false. Indeed, those are the very facts Aleman-Colon confirmed were true in response to the Court's questions at the plea hearing. Docket 76 at 37-39.

Aleman-Colon's reliance on *United States v. Blackwell*, 199 F.3d 623 (2d Cir. 1999), is misplaced. In that case, the district court never asked the defendant "whether he understood the nature of the offense to which he was entering a guilty plea" or "explain the elements of the conspiracy." *Blackwell*, 199 F.3d at 626. In fact, the court

did not even "read the indictment . . . [or] ask the defendant to describe his participation in the offense." *Id.* Under those circumstances, the Second Circuit vacated the conviction, finding that the defendant did not understand the charge against him or its elements. *Id.* Here, in stark contrast, the Court not only asked Aleman-Colon to describe the facts in his own words but also asked him to confirm the facts the government presented—two practices the Second Circuit has found satisfy Rule 11(b). *See Lloyd*, 901 F.3d at 123. And using both a belt and suspenders, the Court then asked the defendant about each essential element of the crime. Docket Item 76 at 40.

Finally, even if there were some error in connection with the requirements of Rule 11, a defendant must show that there is a "reasonable probability that, but for the error, he would not have entered the plea." *United States v. Torrellas*, 455 F.3d 96, 103 (2d Cir. 2006) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)). And Aleman-Colon has not shown that if the Court had somehow engaged in an even more thorough plea colloquy, it would not have found a factual basis or that Aleman-Colon would not have entered the plea.

In sum, Aleman-Colon's claim that his guilty plea lacked a sufficient factual basis is contradicted both by his statements made under oath at the plea hearing and by the plea agreement as well. As discussed above, this Court's thorough questioning of Aleman-Colon before he pleaded guilty not only established his understanding of the charge and penalties, and the voluntariness of his plea, but also ensured the existence of a sufficient factual basis for the plea.

16

## **CONCLUSION**

For the reasons stated above, Aleman-Colon's motion to vacate his judgment of conviction under 28 U.S.C. § 2255, Docket Item 78, is DENIED. His request for a hearing regarding ineffective assistance of counsel, *id.* at 2, is DENIED as well. His petition in W.D.N.Y. Docket No. 23-cv-297 is DISMISSED; and the Clerk of the Court shall close that case.

The Court hereby certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. *Coppedge v. United States*, 369 U.S. 438 (1962). The Court also certifies under 28 U.S.C. § 2253(c)(2) that because the issues raised here are not the type of issues that a court could resolve in a different manner, and because these issues are not debatable among jurists of reason, the petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, the Court denies a certificate of appealability.

Aleman-Colon must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within 60 days of the date this decision and order. *See Williams v. United States*, 984 F.2d 28, 31 (2d Cir. 1993). Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated:   February 26, 2026
         Buffalo, New York

                                            _/s/ Lawrence J. Vilardo_
                                            LAWRENCE J. VILARDO
                                            UNITED STATES DISTRICT JUDGE